NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee/Cross-Appellant*,

*v.*

ROGELIO M. VILLALPANDO, *Appellant/Cross-Appellee*.

Nos. 1 CA-CR 25-0267, 1 CA-CR 25-0321
(Consolidated)

FILED 07-31-2026

Appeal from the Superior Court in Maricopa County
No. CR2022-001322-001
The Honorable Monica Edelstein, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant/Cross-Appellee*

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee/Cross-Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

**W I L L I A M S**, Judge:

**¶1**         Defendant Rogelio Villalpando ("Defendant") appeals his conviction and sentence for one count of disorderly conduct. Defendant's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that after a diligent search of the record, he found no arguable questions of law. Counsel asks us to search the record for reversible error. This court granted Defendant an opportunity to file a supplemental brief *in propria persona* but he did not do so. The State cross-appeals[1]—challenging the trial court's post-verdict ruling setting aside a conviction on another charge—the unlawful discharge of a firearm. After reviewing the entire record for fundamental error, we affirm Defendant's conviction and sentence for disorderly conduct but vacate the directed verdict of acquittal on the count of unlawful discharge of a firearm. We remand to the trial court with instructions to reinstate the verdict of guilt and proceed with sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**         The State charged Defendant with one count of disorderly conduct, a class 6 dangerous felony and domestic violence offense (Count 1), and one count of unlawful discharge of a firearm, a class 6 dangerous felony (Count 2), for conduct arising out of an altercation with his adult son ("Ryan", a pseudonym). The State also alleged aggravating circumstances.

**¶3**         At trial, Ryan recounted a visit by Defendant to his home. According to Ryan, when Defendant arrived, Ryan's younger (adult) brother ("Connor", a pseudonym) was already there. For a time, the three men spoke in the kitchen while drinking beers, but before long, Ryan and Defendant began arguing. Their heated verbal exchange quickly escalated when Defendant "lunged for" and "grabbed" Ryan's loaded gun, which laid on a counter between them. Fearing for the safety of everyone in the

---

[1]         Although the State filed its notice of appeal before Defendant filed his notice of appeal, we treat the State's appeal as a cross-appeal.

home, including his four-year-old son, Ryan immediately reached for the gun. As he and Defendant wrestled, their hands "went up" and a round "went off," leaving a hole in the kitchen ceiling. Ryan repeatedly punched Defendant and gained possession of the gun. He then asked Connor to drive Defendant home. After Defendant and Connor left, Ryan did not contact the police because he viewed the incident as "a family matter." In fact, within hours of the altercation, Ryan plastered over the bullet hole in his ceiling because he did not want his daughter to see it. Later that evening, however, the police contacted Ryan, took photographs of his home, and collected his gun. When asked whether Defendant had his finger on the trigger, Ryan testified that he was uncertain, stating "we both had our hands on it." But he testified unequivocally that Defendant first grabbed the gun, explaining he only reached for the gun to take it away from Defendant out of "fear" that "somebody" might get hurt.

¶4　　　　Next, Connor testified, largely confirming Ryan's account. He stated that he witnessed Ryan and Defendant "having a heated argument," and then saw Defendant "reach for" Ryan's gun "that was sitting on the counter." Unable to identify who pulled the trigger during the ensuing scuffle, Connor testified that Ryan's hands "were collapsed [clasped] around" Defendant's hands when "a round was discharged." Ryan then hit Defendant and gained possession of the gun. Once Ryan had control of the firearm, he asked Connor to take Defendant home, and Connor did so. Describing his own reaction to the events, Connor testified that he froze with panic and fear when Defendant grabbed the gun, worried for everyone's safety. Like Ryan, Connor testified that he did not contact the police because he "chalked it up to a family argument." Shortly after he and Defendant arrived at Defendant's home, however, Defendant's fiancé contacted the police, and Connor spoke with officers later that evening.

¶5　　　　After the State rested, defense counsel moved for a directed verdict of acquittal on both counts under Arizona Rule of Criminal Procedure ("Rule") 20. The trial court denied the motion.

¶6　　　　Defendant then testified. Consistent with his sons' testimony, Defendant described arriving at Ryan's house and sitting at the kitchen counter. He also recounted an argument with Ryan but testified that Ryan retrieved a gun from on top of the refrigerator, pointed it at his head, and fired a shot with the gun positioned next to his ear. After the gunshot, Ryan struck him down and he lost consciousness. When he "c[a]me to," Connor was dragging him outside to his vehicle. Although he tried to contact the police while Connor drove, Connor took his phone, so his fiancée called the police when he returned home. Later that evening, while receiving

treatment at a hospital for a "gash" he sustained on his left eyebrow, Defendant spoke with police officers.

¶7        Retaking the stand as a rebuttal witness, Connor denied that Ryan ever threatened Defendant, either verbally or with a gun. Indeed, he testified unequivocally that Defendant first grabbed the firearm. Consistent with Connor's testimony, Ryan denied retrieving a gun from atop the refrigerator or pointing a gun at Defendant, reiterating that Defendant first reached for the gun on the kitchen counter.

¶8        A jury found Defendant guilty as charged. The jurors also found proven the alleged aggravating circumstances: (1) Count 1 was both dangerous and a domestic violence offense, and (2) Count 2 was a dangerous offense.

¶9        After excusing the jurors, the trial court, on its own initiative, entered a directed verdict on Count 2. The court explained that having reviewed the evidence, it determined insufficient evidence supported the conviction:

> [T]he State failed to provide any evidence through testimony or otherwise, that Defendant actually fired the gun. Unlike Count 1[,] . . . Count 2 requires evidence to support that it was Defendant who actually fired the gun. The State has failed to present sufficient evidence that Defendant discharged the firearm to support a conviction on Count 2 beyond a reasonable doubt.

The State timely appealed.

¶10        At the sentencing hearing, the trial court found several mitigating factors: family support, medical issues, lack of criminal history, and cooperation with law enforcement. Finding that these mitigating factors, on balance, outweighed the jury's finding of dangerousness, the court sentenced Defendant to a minimum term of 1.5 years' imprisonment on Count 1, with 31 days presentence incarceration credit.

¶11        Defendant timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

¶12 Under Rule 20(a)(1), a trial court "must enter a judgment of acquittal" before a jury renders a verdict "if there is no substantial evidence to support a conviction." If, after a guilty verdict, the court determines "no substantial evidence" supports it, Rule 20(b)(2) requires the court, on its own initiative, to "order a judgment of acquittal."

¶13 We review *de novo* a trial court's ruling on a Rule 20 motion, whether at trial or post-verdict. *State v. West*, 226 Ariz. 559, 562–63, ¶¶ 15, 19 (2011). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 562, ¶ 16 (citation modified). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial. *Id.* In reviewing the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and neither reweigh conflicting evidence nor assess the credibility of witnesses, *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013).

¶14 First, as part of our *Anders* review, we examine the sufficiency of the evidence supporting Defendant's conviction for disorderly conduct. As charged in this case, a person commits disorderly conduct by intentionally or knowingly disturbing "the peace or quiet" of a "family or [] person" through the reckless handling, displaying, or discharging of a deadly weapon. A.R.S. § 13-2904(A)(6).

¶15 At trial, Ryan and Connor both testified, unequivocally, that Defendant first lunged for the gun. Defendant, by contrast, testified that he never touched the gun. Deferring to the jury's assessment of the witnesses' credibility and the weight to accord the conflicting evidence, as we must, substantial evidence supports a finding that Defendant intentionally grabbed Ryan's gun with the knowledge that his control over (handling of) the firearm would alarm (disturb the peace) both his sons. Because the State presented some evidence to support each element of the offense, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, the trial court did not err by denying Defendant's Rule 20 motion for a directed verdict of acquittal on the count of disorderly conduct.

¶16 Next, we turn to the State's contention that the trial court improperly entered a post-verdict ruling directing an acquittal on the count of unlawful discharge of a firearm. A person commits unlawful discharge

of a firearm by, acting with "criminal negligence," "discharg[ing] a firearm within or into the limits of any municipality." A.R.S. § 13-3107(A). A person acts with criminal negligence when he "fails to perceive a substantial and unjustifiable risk that the result will occur." A.R.S. § 13-105(10)(d). "The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Id.*

¶17 "Unless there is 'a complete absence of probative facts to support a conviction,' a Rule 20 motion should be denied." *State v. Sabalos*, 178 Ariz. 420, 422 (App. 1994) (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). "[I]f the record reveals the presence of facts from which a reasonable jury could infer guilt beyond a reasonable doubt," a trial court may not set aside a jury's verdict of guilt. *Id.*

¶18 Pointing to evidence that he grabbed the gun first, the State posits that Defendant "had primary control of the weapon when it went off during the struggle." Working from this premise, the State argues that the "jurors could reasonably find [Defendant] discharged the firearm with criminal negligence." To the extent the trial court predicated its directed verdict ruling on "an implicit conclusion" that A.R.S. § 13-3107 criminalizes only the intentional or knowing discharge of a firearm or requires evidence that the defendant's "finger was on the trigger" when the "weapon was discharged," the State contends the court misapprehended the law and improperly added elements to the offense. *See State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001) ("Courts may not add elements to crimes defined by statute.").

¶19 To be sure, the State did not put forward any evidence, testimonial or otherwise, that Defendant pulled the trigger as he and Ryan jockeyed for control of the gun. But the express language of A.R.S. § 13-3107 does not identify "pulling the trigger" as an element of the offense. Rather, the statute's plain language encompasses the unintentional discharge of a firearm if the discharge is the result of criminal negligence.

¶20 "Conduct is the cause of a result when both of the following exist: 1. But for the conduct the result in question would not have occurred[;] 2. The relationship between the conduct and result satisfies any additional causal requirements imposed by the statute defining the offense." A.R.S. § 13-203(A).

¶21 At trial, both Ryan and Connor testified that: (1) Defendant first grabbed the gun, (2) Defendant and Ryan fought for possession and control of the weapon, (3) during the struggle, the firearm discharged, and

(4) neither knew who pulled the trigger.[2] Pointing to this evidence, the State contends that Defendant acted with criminal negligence when he escalated the verbal altercation by arming himself with the gun—creating a substantial and unjustifiable risk of an ensuing struggle to gain control over the firearm—a struggle that could, and did, result in the discharge of the weapon.

¶22        Defendant contests the State's reasoning. Although he concedes that a person who recklessly displays a weapon during a verbal altercation "would be responsible for recognizing that [the other party to the argument] may try to take the gun," he contends the arming party could not be charged with foreseeing that such a scuffle could result in "an accidental discharge."

¶23        We agree with the State. By inserting a gun into his verbal dispute with his son, Defendant arguably created a substantial and unjustifiable risk the firearm would discharge during the foreseeable, ensuing struggle for possession and control of the weapon. Had Defendant not grabbed the gun from the counter, there would have been no risk of such a discharge. *See State v. Aragon*, 252 Ariz. 525, 528–29, ¶¶ 8–11 (2022) (explaining a defendant is not relieved of culpability when another force also "operates" to produce harm if: (1) the other force was foreseeable, or (2) "the defendant's course of conduct actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause of the injury and never an intervening force" (citation modified)).

¶24        Applying the criminal negligence standard to the evidence presented at trial, a reasonable jury could have found that Defendant's escalation of the conflict (grabbing a gun) constituted a gross deviation from the standard of care that a reasonable person would have observed in the situation. Because the State presented probative evidence from which a reasonable jury could infer guilt beyond a reasonable doubt, the trial court erred by setting aside the jury's verdict and ordering a judgment of acquittal on the count of unlawful discharge of a firearm. Accordingly, we vacate the court's order and remand with directions to reinstate the verdict of guilt.

¶25        Finally, a review of the record confirms that all proceedings were conducted in compliance with the Arizona Rules of Criminal

---

2        The parties did not dispute that the discharge occurred within municipal limits.

Procedure. Defendant was at all times represented by counsel and was present at all critical stages of the proceedings, including the trial and verdict. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages); *see also State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). The jury appropriately consisted of eight jurors; and the record shows no evidence of juror misconduct. A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). The trial court properly instructed the jury of Defendant's presumption of innocence, the State's burden of proof, and the elements of the charged offenses. At sentencing, Defendant was given an opportunity to speak, and the court stated on the record the evidence and materials it considered and the factors it found in imposing the sentence for disorderly conduct. *See* Ariz. R. Crim. P. 26.9, 26.10. Additionally, the sentence imposed was within the statutory limits. *See* A.R.S. §§ 13-701, -704(A). Our review of the entire record reveals no fundamental error with respect to the disorderly conduct conviction and sentence. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error.").

## CONCLUSION

¶26　　　　We affirm the conviction and sentence for disorderly conduct, reverse the post-verdict ruling directing an acquittal on the count of unlawful discharge of a firearm, and remand for the trial court to reinstate the verdict of guilt and proceed with sentencing.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:　　　　JR